UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAROL ROSICH,

       Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.
_____/

Hon. Ellen S. Carmody

Case No. 1:13-cv-1291

## **OPINION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. On February 11, 2014, the parties agreed to proceed in this Court for all further proceedings, including an order of final judgment. (Dkt. #12).

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

1

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

interference.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 60 years of age on her alleged disability onset date.  (Tr. 117).  She successfully completed high school and worked previously as a mortgage loan originator and supervisor.  (Tr. 24, 138).  Plaintiff applied for benefits on March 30, 2010, alleging that she had been disabled since September 15, 2009, due to osteoarthritis.  (Tr. 117-20, 137).  Plaintiff's applications were denied, after which time she requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 60-116).  On April 8, 2011, Plaintiff appeared before ALJ Janice Shave with testimony being presented by Plaintiff and a vocational expert.  (Tr. 28-59).  In a written decision dated April 26, 2011, the ALJ determined that Plaintiff was not disabled.  (Tr. 19-24).  The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-5).  Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

On March 30, 2010, Plaintiff met with a representative of the Social Security Administration who observed that Plaintiff "rose slowly from sitting position - she walked slowly and stiffly away from my desk."  (Tr. 134).

Treatment notes dated September 16, 2010, indicate that Plaintiff "has problems with arthritis" and that she has previously undergone "right knee replacement and multiple knee surgeries" as well as bilateral carpal tunnel surgery. (Tr. 243). An examination revealed that Plaintiff "does have some swelling of joints, MIP joints, this could be consistent with osteoarthritis." (Tr. 243). Treatment notes dated October 12, 2010, indicate that Plaintiff was suffering from "severe end-stage tricompartmental arthritis, multifocal arthritis in the hands and knees." (Tr. 242).

X-rays of Plaintiff's left knee, taken October 13, 2010, revealed that Plaintiff was experiencing "severe end-stage arthritic changes...in all 3 joint compartments" with "near bone-on-bone articulation of the lateral joint space." (Tr. 251). The x-rays also revealed the presence of chondrocalcinosis.[1] (Tr. 251).

On October 19, 2010, Plaintiff was examined by Dr. Jeffrey Thome. (Tr. 241). The doctor's treatment notes were as follows:

> The patient comes in following on her joint pain. Her hematology profile was negative. Uric acid, glucose, lipid panel, sed rate, rheumatoid factor, ANA, serum protein electrophoresis all negative. We will set her up with CPK, x-ray of the left knee, left shoulder and right hand to follow.

(Tr. 241).

At the administrative hearing, Plaintiff testified that she underwent right knee replacement "17 or 18 years ago." (Tr. 37). Plaintiff further reported that prior to that surgery she underwent approximately 12 other knee surgeries "for cleaning out the cartilage, cleaning out the bone chips, trying to stave off full replacement as long as they could." (Tr. 37). With respect to her

---

[1] Chondrocalcinosis "is a condition characterized by deposits of calcium pyrophosphate dihydrate (CPPD) crystals in one or more joints that eventually results in damage to the affected joints." *See* Chondrocalcinosis, available at http://www.riversideonline.com/health_reference/Questions-Answers/AN00814.cfm (last visited on September 30, 2014). Chondrocalcinosis "occurs most often in women older than age 50" and is associated with osteoarthritis. *Id.*

left knee, Plaintiff reported that her doctor has recommended knee replacement but that she lacks insurance or other resources to pay for such an operation. (Tr. 37). With respect to the condition of her knees, the following exchange occurred between Plaintiff and the ALJ:

> Q   And what kind of symptoms do you have with, say, with your left knee?
>
> A   Well, I can't stand on it for very long because it hurts or it gives out. When I sit, then when I get up, I have a difficult time getting up because it tends to lock up, and I have to give it a few minutes before I can actually put weight on it, straighten it out. It's painful.
>
> Q   And your right knee, what kind of symptoms do you have there?
>
> A   My right knee is very good with the replacement other than that it does stiffen up. I think that's probably due to the muscles not being as active as what they could be because of my inability to do a lot of exercise or do much of anything because of the left knee and because of the other problems I have with a lot of movement, and it's just a lot of pain.
>
> Q   And when you said you can't stand long, could you give us some idea in general, say, if you were standing at a table like this trying to do something on the table, how long could you stand and - - ?
>
> A   Probably 15 or 20 minutes and then I'd have to sit down and take some rest. Again, getting up and down is a problem. The stiffness in the knee, the locking of it, when I do get up, it's a major issue. So, it's difficult. I try to find a balance between the two.
>
> Q   And do you ever have to sit with your legs reclined or lay down because of the pain - -
>
> A   Yes.
>
> Q   - - that you have?
>
> A   Yes. Usually several times a day I sit in a reclining type

>   chair. We have a lift chair with the motorized, and I use that to sit because then it's easier to get up with the lift chair than to try to get up from just a regular chair in a reclining position, it's difficult. So, I use that several times a day for rest.
>
> Q   And about what - - how long a period of time generally?
>
> A   At least half hour. Usually once or twice a day I'll try to take an hour to an hour and a half maybe a nap or a rest. I don't sleep well at night.

(Tr. 37-39).

Plaintiff testified that she takes "over-the-counter" Ibuprofen two to three times daily, but that "it's basically the prescription strength." (Tr. 41). Plaintiff further reported that she "take[s] Toradol at night for pain." (Tr. 41). With respect to the difficulties she experiences with her right hand, Plaintiff testified as follows:

>   I have severe pain in the bones. And my hand and the fingers, there's a lot of pain. Sometimes I can bend it and close it all the way, but many times I can't. It's just very severe. And then I also have pain that goes down my arm from the shoulder. Both shoulders are very - - it's like a hot pain right in the shoulder. And the pain goes down my arm and into my wrists, into my hands like a hot, sharp pain.

(Tr. 42).

Plaintiff also reported that she previously "had carpal tunnel surgery done on both of the wrists" when she was in her 30s. (Tr. 43). With respect to her activities, Plaintiff reported that she uses email "to keep in touch with my children, a few minutes here and there." (Tr. 44). Plaintiff reported that she likes to "read and sometimes I watch our birds." (Tr. 44). Plaintiff reported that she takes "short walks" of "a couple of hundred feet out to the mailbox and back to get fresh air." (Tr. 44). She reiterated that "I have to do things that are limited to short periods of being on my feet, short periods of doing just about anything." (Tr. 44).

## **ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2]  If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir.

---

[2] 1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4.  If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5.  If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from: (1) severe end stage tricompartmental arthritis in her knees; (2) right knee status total replacement; (3) left knee awaiting surgery; (4) arthritis in right hand and fingers; (5) chronic pain; (6) obesity; and (7) degenerative joint disease of the cervical spine, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  (Tr. 21-22).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light work[3] subject to the following limitations: (1) she can stand or walk for six hours of an 8-hour workday; (2) she can sit for two hours of an 8-hour workday; (3) she can occasionally use foot controls with her left lower extremity; (4) she can never kneel, crouch, crawl, or climb ladders, ropes, or scaffolds; (5) she can occasionally balance with a handheld assistive device; (6) she can occasionally perform overhead reaching bilaterally; (7) she should avoid repetitive rotation, flexion, or extension of the neck; (8) she can occasionally handle, defined as gross manipulation, with her right hand; (9) she can occasionally finger, defined as fine manipulation, with the right hand; (10) she should avoid concentrated exposure to extreme cold; and (11) she should avoid all exposure to unprotected heights and explosives.  (Tr. 22).  Based on the testimony of a vocational expert, the ALJ concluded that Plaintiff retained the ability to perform her past relevant work as a mortgage loan originator and supervisor.  Accordingly, the ALJ denied Plaintiff's application for benefits.

---

[3] Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567.  Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday."  20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983); *Van Winkle v. Commissioner of Social Security*, 29 Fed. Appx. 353, 357 (6th Cir., Feb. 6, 2002).

**I.         Plaintiff is Not Entitled to a Sentence Six Remand**

As part of her request to obtain review of the ALJ's decision, Plaintiff submitted to the Appeals Council additional evidence which was not presented to the ALJ. (Tr. 1-4, 254-58). The Appeals Council received the evidence into the record and considered it before declining to review the ALJ's determination. This Court, however, is precluded from considering such material. In *Cline v. Commissioner of Social Security*, 96 F.3d 146 (6th Cir. 1996), the Sixth Circuit indicated that where the Appeals Council considers new evidence that was not before the ALJ, but nonetheless declines to review the ALJ's determination, the district court cannot consider such evidence when adjudicating the claimant's appeal of the ALJ's determination. *Id.* at 148; *see also*, *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007) (quoting *Cline*, 96 F.3d at 148).

If Plaintiff can demonstrate, however, that this evidence is new and material, and that good cause existed for not presenting it in the prior proceeding, the Court can remand the case, pursuant to sentence six of 42 U.S.C. § 405(g), for further proceedings during which this new evidence can be considered. *Cline*, 96 F.3d at 148. To satisfy the materiality requirement, Plaintiff must show that there exists a reasonable probability that the Commissioner would have reached a different result if presented with the new evidence. *Sizemore v. Secretary of Health and Human Serv's*, 865 F.2d 709, 711 (6th Cir. 1988). Plaintiff bears the burden of making these showings. *See Hollon ex rel. Hollon v. Commissioner of Social Security*, 447 F.3d 477, 483 (6th Cir. 2006). By failing to address this issue in her pleadings, Plaintiff has failed to satisfy her burden in this regard. Accordingly, Plaintiff is not entitled to a sentence six remand.

**II.        The ALJ's RFC Determination is not Supported by Substantial Evidence**

As noted above, the ALJ concluded that Plaintiff retained the ability to perform a range of light work, including the ability to stand or walk for six hours of an 8-hour workday. Plaintiff argues that the ALJ's RFC fails to sufficiently account for her impairments and limitations.

A claimant's RFC represents her ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule." Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996); *see also*, *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 116 (6th Cir., Nov. 18, 2010).

While the present record contains a paucity of medical evidence, such is nevertheless sufficient to demonstrate that the ALJ's conclusion that Plaintiff can stand or walk for 6 hours during an 8-hour workday is supported by neither substantial evidence nor common sense. Simply stated, the evidence establishes that Plaintiff suffers from "severe" osteoarthritis of the left knee which has resulted in "near bone-on-bone articulation of the lateral joint space." It is unreasonable to conclude that a 60 year old woman suffering from such an impairment could perform light work activities while standing or walking for six hours of an 8-hour day. Accordingly, the Court concludes that the ALJ's RFC determination is not supported by substantial evidence.

**III.        The ALJ's Credibility Assessment is not Supported by Substantial Evidence**

As described above, Plaintiff testified at the administrative hearing that she was impaired to an extent well beyond that recognized by the ALJ. The ALJ, however, discounted Plaintiff's allegations on the ground that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 23). Plaintiff asserts that the ALJ's credibility assessment is not supported by substantial evidence.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit recently stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Commissioner of Social Security*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) (citation omitted).

Nevertheless, "blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Minor v. Commissioner of Social Security*, 2013 WL 264348 at *16 (6th Cir., Jan. 24, 2013). Furthermore, the ALJ must "consider all objective medical evidence

in the record, including medical signs and laboratory findings, where such evidence is produced by acceptable medical sources." *Id.*

In discounting Plaintiff's subjective allegations, the ALJ first observed that Plaintiff "has not taken any narcotic-based pain relieving medications despite allegations of quite limiting pain" and instead "takes over the counter medications." (Tr. 23-24). While accurate, this conclusion hardly calls into question Plaintiff's credibility. At the administrative hearing, Plaintiff testified that her doctors specifically recommended that she *not* take "narcotic drugs" to treat her pain. (Tr. 41). Plaintiff testified that her doctors had instead recommended that she take ibuprofen and non-narcotic medications. (Tr. 41-42). The ALJ has identified nothing in the record that contradicts this testimony. The ALJ next discounted Plaintiff's credibility on the ground that the objective medical evidence "does not support such severe limitations." (Tr. 24). As discussed above, the medical evidence of record, while quite sparse, nevertheless reveals that Plaintiff is far more limited than the ALJ recognized. In sum, the ALJ's rationale for discounting Plaintiff's subjective allegations is not supported by substantial evidence.

**IV.     Remand is Appropriate**

The ALJ's conclusion that Plaintiff is not disabled was based on the vocational expert's testimony that if limited to the extent reflected by the ALJ's RFC determination, Plaintiff would still be able to perform her past relevant work as a mortgage loan originator and supervisor. As discussed above, however, the ALJ's RFC is not supported by substantial evidence and because the vocational expert's testimony was premised upon a faulty RFC determination, the ALJ's reliance thereon does not constitute substantial evidence. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150

(6th Cir. 1996) (while the ALJ may rely upon responses to hypothetical questions posed to a vocational expert, such questions must accurately portray the claimant's impairments).

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if proof of her disability is "compelling." *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and award benefits if all essential factual issues have been resolved and proof of disability is compelling). While the ALJ's decision is not supported by substantial evidence, there does not exist *compelling* evidence that Plaintiff is disabled. In sum, evaluation of Plaintiff's claim requires the resolution of factual disputes which this Court is neither authorized nor competent to undertake in the first instance. Accordingly, the Commissioner's decision is reversed and this matter remanded for further factual findings.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is **reversed and the matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**. A judgment consistent with this opinion will enter.

Date: October 20, 2014                               /s/ Ellen S. Carmody
                                                     ELLEN S. CARMODY
                                                     United States Magistrate Judge